# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

SCOTT HOLLAND,                                No. CIV S-10-2110-GEB-CMK

        Plaintiff,

   vs.                                                <u>FINDINGS AND RECOMMENDATIONS</u>

TD AMERITRADE, INC.,

        Defendant.

_____/

      Plaintiff, who is proceeding pro se, brings this civil action.  Pending before the court is defendant's motion to dismiss (Doc. 15).  A hearing on the motion was held on December 20, 2010, before the undersigned in Redding, California.  Defense counsel Lois Rosenbaum appeared at the hearing; Plaintiff was not present.

## I.        BACKGROUND

      Plaintiff originally filed this action in the Siskiyou County Superior Court.  Defendants removed the case to this court on the basis of federal question and diversity jurisdiction.  Plaintiff's complaint challenges the treatment he received from defendants over the past twelve years through his investment self directed account (SDA).  The complaint raises the following claims: RICO, fraud, unfair trade practices, negligence, breach of duty, failure to protect, failure to supervise, securities fraud, violation of gaming laws, and violation of California's consumers legal remedies act.

/ / /

1

## II.   MOTION TO DISMISS

2

A.   Motion

3      Defendant brings this motion to dismiss the complaint on the grounds that it is

4 facially implausible and fails to state a claim.  Alternatively, defendant argues that if any claims

5 survive the motion to dismiss, plaintiff should be required to submit them to arbitration.

6 Defendant's underlying argument is that the complaint is deficient in meeting the pleading

7 requirements for plaintiff's claims.  According to defendant, the complaint lacks sufficient facts

8 to support any of his claims, he fails to meet the heightened pleading standards, and fails to

9 identify any duty the defendants had to plaintiff.  In addition, defendant argues plaintiff lacks

10 standing to raise a criminal claim.

11      No opposition to the motion has been filed.[1]

12

B.   Standards

13      In considering a motion to dismiss, the court must accept all allegations of

14 material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The

15 court must also construe the alleged facts in the light most favorable to the plaintiff.  See Scheuer

16 v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S.

17 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All

18 ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen,

19 395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by actual

20 factual allegations, need not be accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50

21 (2009).  In addition, pro se pleadings are held to a less stringent standard than those drafted by

22 lawyers.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).  "Although a pro se litigant ... may be

23

24

25

26

---

[1]      Pursuant to the Eastern District of California Local Rule 230(c), if an opposition to a motion is not timely filed, no party is entitled to be heard in opposition of the motion. Plaintiff failed to file an opposition to the motion, so the court could have taken the hearing off calendar.  However, the court provided plaintiff the benefit of being heard in opposition to the motion at oral argument.  Plaintiff failed to avail himself of this additional opportunity.

1   entitled to great leeway when the court construes his pleadings, those pleadings nonetheless must

2   meet some minimum threshold in providing a defendant with notice of what it is that it allegedly

3   did wrong."  Brazil v. United States Dept of Navy, 66 F.3d 193, 199 (9th Cir. 1995).

4          Rule 8(a)(2) requires only "a short and plain statement of the claim showing that

5   the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is

6   and the grounds upon which it rests."  Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007)

7   (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order to survive dismissal for

8   failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic

9   recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to

10  raise a right to relief above the speculative level."  Id. at 555-56.  The complaint must contain

11  "enough facts to state a claim to relief that is plausible on its face."  Id.  at 570.  "A claim has

12  facial plausibility when the plaintiff pleads factual content that allows the court to draw the

13  reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at

14  1949.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

15  than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Twombly, 550 U.S.

16  at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability,

17  it 'stops short of the line between possibility and plausibility for entitlement to relief."  Id.

18  (quoting Twombly, 550 U.S. at 557).

19         In deciding a Rule 12(b)(6) motion, the court generally may not consider materials

20  outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998);

21  Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The court may, however, consider: (1)

22  documents whose contents are alleged in or attached to the complaint and whose authenticity no

23  party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question,

24  and upon which the complaint necessarily relies, but which are not attached to the complaint, see

25  Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials

26  of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir.

1   1994).

2       Finally, leave to amend must be granted "[u]nless it is absolutely clear that no

3   amendment can cure the defects."  Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per

4   curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

5       C.   Discussion

6       Plaintiff's claims include RICO, fraud, negligence, deceptive trade practices,

7   violation of gaming laws, and consumers legal remedies act.

8       1.  RICO (Claim 1):

9       Plaintiff's complaint states defendants violated RICO based on "conduct of an

10  enterprise through a pattern of racketeering activity."  Predicate acts included sending bills

11  though the USPS & using wire services to transmit funds.  He also claims defendant's violations

12  "harmed Plaintiff."

13      Defendant argues plaintiff fails to allege sufficient facts in support of the elements

14  of a RICO claim, that he fails to allege any specific conduct, and fails to allege that some

15  concrete financial loss was proximately caused by an alleged scheme.

16      The Racketeer Influenced and Corrupt Organizations Act (RICO) is codified at 18

17  U.S.C. § 1961, et seq.  Section 1962 provides:

18          (a)  It shall be unlawful for any person who has received any
            income derived, directly or indirectly, from a pattern of
19          racketeering activity or through collection of an unlawful debt in
            which such person has participated as a principal within the
20          meaning of section 2, title 18, United States Code, to use or invest,
            directly or indirectly, any part of such income, or the proceeds of
21          such income, in acquisition of any interest in, or the establishment
            or operation of, any enterprise which is engaged in, or the activities
22          of which affect, interstate or foreign commerce.  A purchase of
            securities on the open market for purposes of investment, and
23          without the intention of controlling or participating in the control
            of the issuer, or of assisting another to do so, shall not be unlawful
24          under this subsection if the securities of the issuer held by the
            purchaser, the members of his immediate family, and his or their
25          accomplices in any pattern or racketeering activity or the collection
            of an unlawful debt after such purchase do not amount in the

26  / / /

4

1         aggregate to one percent of the outstanding securities of any one
      class, and do not confer, either in law or in fact, the power to elect
2         one or more directors of the issuer.

3         (b)  It shall be unlawful for any person through a pattern of
      racketeering activity or through collection of an unlawful debt to
4         acquire or maintain, directly or indirectly, any interest in or control
      of any enterprise which is engaged in, or the activities of which
5         affect, interstate or foreign commerce.

6         (c)  It shall be unlawful for any person employed by or associated
      with any enterprise engaged in, or the activities of which affect,
7         interstate or foreign commerce, to conduct or participate, directly
      or indirectly, in the conduct of such enterprise's affairs through a
8         pattern of racketeering activity or collection of unlawful debt.

9         (d)  It shall be unlawful for any person to conspire to violate any of
      the provisions of subsection (a), (b), or (c) of this section.

10

11         The Private Securities Litigation Reform Act (PSLRA), codified in relevant part

12   at 18 U.S.C. § 1964(c), amended RICO to state:

13         Any person injured in his business or property by reason of a
      violation of [RICO] may sue therefor in any appropriate United
14         States district court ..., except that no person may rely upon any
      conduct that would have been actionable as fraud in the purchase
15         or sale of securities to establish a violation of [RICO].

16         "The elements of a civil RICO claim are as follows:  '(1) conduct (2) of an

17   enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5)

18   causing injury to plaintiff's business or property.'"  Living Designs, Inc. V. E.I. Dupont de

19   Nemours & Co., 431 F.3d 353, 361 (9th Cir. 2005) (quoting Grimmett v. Brown, 75 F.3d 506,

20   510 (9th Cir. 1996); 18 U.S.C. § 1964(c), 1962(c)).

21         Here, plaintiff's conclusory allegations do no more than state the elements of the

22   claim.  His RICO claim centers around the entire industry's method of allowing people access to

23   securities trading without oversight.  He seems to argue that defendant, as well as similar

24   businesses, take advantage of people like plaintiff in order to make money.  He claims

25   defendant's advertisement misrepresents the services provided, that defendant uses the

26   information obtained from plaintiff and the trades he makes, to make additional money which

1   causes plaintiff to lose money, and then defendant reinvests that money to make more.  However,

2   he fails to allege clear actions on the part of defendant, and what specific conduct constitutes the

3   racketeering activity, or the predicate acts.  Nowhere in his complaint does plaintiff specify

4   explicit actions, much less then when, where and how those actions are in violation of RICO.

5          In addition, pursuant to the PSLRA, a securities fraud claim cannot form the basis

6   of a RICO claim.  See Howard v. America Online Inc., 208 F.3d 741, 749-50 (9th Cir. 2000).

7   The same is true for claims arising from mail fraud, wire fraud and bank fraud as the predicate

8   acts to support a RICO action.  See Bald Eagle Area School Dist. v. Keystone Financial, Inc., 189

9   F.3d 321, 329-30 (3d Cir. 1999); see also Swartz v. KPMG. LLC, 401 F. Supp. 2d 1146, 1151

10  (W.D. Wash 2004 ) (citing Howard, 208 F.3d at 749-50) (aff'd in part, rev'd in part by Swartz v.

11  KPMG. LLC, 476 F.3d 756 (9th Cir. 2007)).

12         Accordingly, Plaintiff cannot claim violation of RICO based on securities fraud,

13  mail fraud, or wire fraud.  The motion to dismiss the RICO claims should be granted, with no

14  leave to amend.

15         2.  Fraud:

16         (Claim 2):  Plaintiff claims he relied on defendant's advertisements and license as

17  inducements to enter into contract.  Defendant failed to disclose their violation of laws and

18  standards of duty.  Thus the arbitration clause is unenforceable.  He also claims defendants had a

19  duty to inform Plaintiff of the conflicts of interests inherent in defendant's business model.  If the

20  conflict of interest had not been concealed, Plaintiff would not have entered into contract.

21  "TDA's actions harmed Plaintiff."

22         (Claim 3):  Plaintiff also claims he believed he was dealing with a securities

23  broker operating legally, but defendant was not.  Defendant concealed conflict of interests

24  harmful to plaintiff knowing plaintiff's beliefs, and with the intent to harm him.  Plaintiff relied

25  on defendant's statements; defendant had duty to inform plaintiff of the conflict of interest  and

26  took unfair advantage of him.  Plaintiff claims he would not have contracted with defendant if

the conflict of interest and superior trading programs were known.

Defendant argues plaintiff's allegations of fraud are vague and conclusory and therefore insufficient to state a plausible claim.  In addition, defendant contends the fraud allegations fail to meet the heightened pleading requirements of Rule 9(b).

The elements of a California fraud claim are: (1) misrepresentation (false representation, concealment or nondisclosure); (2) knowledge of the falsity (or "scienter"); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage.  <u>Lazar v. Superior Court</u>, 49 Cal. Rptr. 2d 377, 380-81 (Cal. 1996).  In addition, Federal Rule of Civil Procedure 9(b) requires that "the circumstances constituting fraud or mistake shall be stated with particularity."  This heightened pleading standard "requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." <u>Lancaster Cmty. Hosp. v. Antelope Valley Dist.</u>, 940 F.2d 397, 405 (9th Cir. 1991).  Thus, "allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." <u>Bly-Magee v. California</u>, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation and internal quotations omitted).

Rule 9(b)'s heightened pleading standard "is not an invitation to disregard Rule 8's requirement of simplicity, directness, and clarity" and "has among its purposes the avoidance of unnecessary discovery." <u>McHenry v. Renne</u>, 84 F.3d 1172, 1178 (9th Cir. 1996). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." <u>Neubronner v. Milken</u>, 6 F.3d 666, 671-672 (9th Cir. 1993) (internal quotations omitted; citing <u>Gottreich v. San Francisco Inv. Corp.</u>, 552 F.2d 866, 866 (9th Cir. 1997)). The Ninth Circuit Court of Appeals has explained:

> Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud. The time, place and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud. The statement in question must be false to be fraudulent. Accordingly, our cases have consistently required that

circumstances indicating falseness be set forth. . . . [W]e [have] observed that plaintiff must include statements regarding the time, place, and *nature* of the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient." . . . The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. . . . In certain cases, to be sure, the requisite particularity might be supplied with great simplicity.

In Re Glenfed, Inc. Sec. Litig., 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (en banc) (italics in original) *superseded by statute on other grounds as stated in* Marksman Partners, L.P. v. Chantal Pharm. Corp., 927 F. Supp. 1297 (C.D. Cal. 1996); see Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997) ("fraud allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged).

Here, plaintiff's claims are vague, and are not set forth with any specificity. He appears to be arguing that defendant's advertisement was misleading, they knew it was misleading, created the misleading advertisement with the intent to induce plaintiff into entering into a contract with them, that plaintiff justifiably relied on that misleading advertisement, which caused him damages. However, that is basically a simple recitation of the elements of the cause of action, which is insufficient. He fails to allege what the advertisement was and how it was misleading. It appears, but is not all together clear, that plaintiff somehow thought the agreement he entered into was a full service brokerage account, providing him with experts to assist him, rather than a self directing account, or at least that the defendant's employees would be helping plaintiff. However, he does not say as much in his complaint. The court is also unable to gather whether plaintiff maintains that defendant offered the public a full service brokerage account. When questioned during the hearing on defendants' motion to dismiss, counsel for the defendants represented that defendants did not offer full service brokerage accounts to the public. If so, the court finds it difficult to understand how plaintiff could have been mislead since the option he claims existed, apparently did not. Without resolving this contradiction, plaintiff

1    should be permitted to amend.

2            Plaintiff also makes some claim about a conflict of interest and unfair advantage.

3    These allegations are unclear.  Plaintiff does not clarify what the conflict of interest was.  It

4    appears he may be claiming that because he only had a self directed account, and defendant had

5    other customers with full service accounts, there was some sort of conflict.  But again, it is

6    unclear.  Similarly, his claim of unfair advantage is unclear.  Plaintiff fails to set forth how

7    defendant put plaintiff at a disadvantage and who he was at a disadvantage to.  Perhaps he means

8    the customers with a full service account had an unfair advantage because they were able to

9    obtain advice from defendant's employees whereas he was not.  However, even if that was the

10   allegations, the full service customers were presumably paying for that service, where plaintiff

11   was not.

12           If plaintiff can somehow plead facts to support his claim that he was induced into

13   entering into a misleading contract, wherein the defendants misrepresented that what he was

14   paying for was a full service contract instead of the self directed account he received, perhaps the

15   defects in his claim are curable.  As plead now, however, the complaint fails to meet the pleading

16   standards.

17           The motion to dismiss the fraud allegations should be granted, but plaintiff should

18   be provided leave to file an amended complaint on the limited basis of amending his fraud claim.

19           3.  Unfair Trade Practices/Consumer Legal Remedies (claim 4):

20           Plaintiff next claims that defendant offended public policy by its deceptive

21   practices.  Defendant intended plaintiff to rely on the misrepresentation knowing it was likely to

22   harm him.  Defendant concealed knowledge that SDA accounts statistically lose money.

23   Defendant deceived plaintiff by its advertisement.  Violated deceptive trade practices act and

24   consumers legal remedies act, which harmed plaintiff.

25           Defendant argues that California adopted the Unfair Competition Law (UCL),

26   Cal. Bus. & Prof. Code § 17200 *et seq.*, instead of the Deceptive Trade Practices Act.  The UCL

defines unfair competition as any unlawful, unfair or fraudulent business practice.  The

Consumer Legal Remedies Act (CLRA) proscribes 24 specific "unfair methods of competition

and unfair or deceptive acts or practices undertaken by any person in a transaction intended to

result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code

§ 1770.  Defendant states that plaintiff's conclusory statements regarding fraud, unfair

advertisements, and concealment that SDA accounts statistically lose money are insufficient to

state a claim.  In addition, since both of these claims are based on fraud, plaintiff fails to meet the

heightened pleading requirements.

The UCL provides in part: "[U]nfair competition shall mean and include any

unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading

advertising." Cal. Bus. & Prof. Code § 17200.  This statute mirrors the federal counterpart, the

Federal Trade Commission (FTC), 15 U.S.C. § 45 *et seq.*  See Bowen v. Ziasun Technologies,

Inc., 11 Cal. Rptr. 3d 522, 529 (Cal. App. 2004).  As with the FTC, the UCL does not apply to

securities transactions.  See id. at 529-31; see also Feitelberg v. Credit Suisse First Boston, LLC,

36 Cal. Rptr. 3d 592, 599 (Cal. Ct. App. 2005).

"The CLRA was enacted 'to protect consumers against unfair and deceptive

business practices and to provide efficient and economical procedures to secure such

protection.'" McKell v. Washington Mut., Inc., 49 Cal. Rptr. 3d 227, 253 (Cal. Ct. App. 2006)

(quoting Cal. Civ. Code § 1760).  The CLRA makes unlawful certain "unfair methods of

competition and unfair or deceptive acts or practices undertaken by any person in a transaction

intended to result or which results in the sale or lease of goods or services to any consumer."

Cal. Civ. Code § 1770(a).  "Goods" are defined as "tangible chattels bought or leased for use

primarily for personal, family, or household purposes."  Cal. Civ. Code § 1761(a).  "Services"

are defined as "work, labor, and services for other than a commercial or business use, including

services furnished in connection with the sale or repair of goods."  Cal. Civ. Code § 1761(b).

The California Supreme Court has recently held that life insurance is a contract of

indemnity, which is not a tangible chattel or service as defined in the CLRA.  See <u>Fairbanks v.</u>
<u>Superior Court</u>, 205 P.3d 201, 282 (Cal. 2009).  "California's Consumers Legal Remedies Act . .
. does not apply to intangible property or goods, and . . . it contains a restrictive definition of
'services'."  <u>Id.</u> at 284.  Mortgage loan transactions and issuance of credit have similarly been
found not to involve goods or services, and therefore do not fall within the scope of the CLRA.
See <u>Consumer Solutions REO, LCC v. Hillery</u>, 658 F. Supp. 2d 1002 (N.D. Cal. 2009); <u>Berry v.</u>
<u>American Exp. Publishing, Inc.</u>, 54 Cal. Rptr. 3d 91 (Cal. Ct. App. 2007); <u>but see</u> <u>Hernandez v.</u>
<u>Hilltop Financial Mortg., Inc.</u>, 622 F. Supp. 2d 842 (N.D. Cal 2007) (finding services went
beyond merely providing loan).

Defendant does not cite any case holding whether the CLRA applies to securities
transactions, nor has the court found any.  However, as the CLRA only applies to tangible
chattel, it would be inapplicable here as to the sale of the securities.  See <u>Fairbanks</u>, 205 P.3d at
284.  If plaintiff is basing his CLRA claim on the services defendant provided, it is possible, in
so far as no case has held otherwise, that such a claim may fall under the CLRA.   However,
plaintiff's complaint is full of conclusory statements.  He fails to allege any specific facts on
which to base this claim.  His general allegations that the defendant's advertisement was
misleading, fails to allege how the advertisement was misleading. Therefore, the complaint fails
to state a claim.  In addition, as fraud is clearly alleged, he must meet those heightened pleading
standards in pleading the particulars of his claims.

Therefore, the motion to dismiss the claims based on the UCL should be granted
without leave to amend; the motion to dismiss the claims based on the CLRA should be granted,
with limited leave to amend to the extent plaintiff can plead a claim based on the services
defendant provided.

4.  <u>Negligence Claims</u>:

<u>Gross Negligence</u> (Claim 5):

Plaintiff claims defendant failed to set up safeguards to identify and/or protect

1  plaintiff against harmful trading.  Plaintiff demonstrated a lack of understanding and need for

2  protection and/or supervision, but defendant allowed plaintiff to continue to act even after

3  knowing the harm to plaintiff.  This allowed defendant to continue to profit from Plaintiff's

4  harm.

5          Negligence (Claim 6):

6          Plaintiff also claims defendant failed to set up safeguards against harmful trading.

7  Plaintiff demonstrated a lack of understanding and need for protection or supervision.  Defendant

8  was negligent in allowing plaintiff to continue trading after knowing the need for protection.

9          Breach of Duty (Claim 7):

10         Plaintiff further claims defendant breached its duty to plaintiff by failing to

11 disclose conflicts of interest, unfair advantage, and illegal activities.  Defendant also breached its

12 duty by failing to protect plaintiff after plaintiff showed a lack of understanding, and allowing

13 him to continue to trade.

14         Failure to Protect  (Claim 8):

15         Plaintiff next claims that "TDA had a duty to protect Plaintiff's SDA."  Plaintiff

16 demonstrated a lack of understanding and need for protection which defendant ignored.

17 Repeated losses caused Plaintiff extreme financial and psychological harm.  Defendant's intent

18 was to keep plaintiff trading knowing he would continue to harm himself and it would profit.

19         Failure to Supervise  (Claim 8a):

20         Finally, plaintiff claims "TDA had a duty to supervise Plaintiff's SDA."  Plaintiff

21 demonstrated a lack of understanding and need for supervision.  Defendant's intent was to keep

22 plaintiff trading knowing he would continue to harm himself and it would profit.

23         Defendant argues all of these claims are negligence based, but plaintiff fails to

24 identify any legal duty defendant owed plaintiff.  Defendant states it had no duty to protect

25 plaintiff from his own action and brokers have no duty to advise self directing account

26 customers.  In addition, there is no allegation that plaintiff's damages are a result of defendant's

1 breach of duty, but rather the damages arise from plaintiff's own actions.

2        The elements for a negligence claim are: duty, breach of duty, legal cause; and

3 damages.  See Friedman v. Merck & CO., 131 Cal. Rptr. 2d 885, 890 (Cal. Ct. App. 2003)

4 (citations omitted).  "The existence of a duty is the threshold element of a negligence cause of

5 action."  Id. (citing Paz v. State of California, 994 P.2d 975 (Cal. 2000).

6        Here, plaintiff's claim is insufficient in that there is no clear duty that was

7 breached.  Plaintiff's allegations all relate to some failure to protect plaintiff from his own

8 actions.  He argues the defendant should have known that plaintiff needed protection as plaintiff

9 had called for advice and informed defendant's employees that he did not understand the system.

10 However, he fails to identify what legal duty was owed him.

11        It does not seem plausible that plaintiff can plead some legal duty defendant owed

12 him in order to state a claim for negligence.  It therefore appears these claims should be

13 dismissed without leave to amend.  See Iqbal, 129 S. Ct. at 1949.

14        5.  Securities Fraud (Claim 9):

15        Here, plaintiff claims defendant fraudulently concealed conflicts of interest related

16 to securities transactions between the parties, concealed violations of law related to the

17 transactions, and intended for Plaintiff to trade securities using TDA, from which it profited.

18 Plaintiff was harmed by the securities fraud.

19        Here again, defendant argues plaintiff fails to meet the heightened pleading

20 standards for fraud.  Plaintiff fails to plead any material statement or omission, the complaint

21 lacks facts indicating the falsity of any such statements or omissions, there are no particular facts

22 plead as to scienter, and no allegation that plaintiff's losses were tied to or caused by defendant's

23 misrepresentation or omission.

24        Section 10b of the Securities Exchange Act of 1934 provides:

25        It shall be unlawful for any person ... To use or employ, in
       connection with the purchase or sale of any security ... any

26        manipulative or deceptive device or contrivance in contravention
       of such rules and regulations as the Commission may prescribe as

1            necessary or appropriate in the public interest or for the protection
of investors.

2   15 U.S.C. § 78j(b)

3            In cases involving publically traded securities and
purchases or sales in public securities markets, the action's basic

4   elements include: (1) a material misrepresentation (or omission);
(2) scienter, i.e., a wrongful state of mind; (3) in connection with

5   the purchase or sale of a security; (4) reliance . . .; (5) economic
loss; and (6) "loss causation," i.e., a causal connection between the

6   material misrepresentation and the loss.

7   <u>Dura Pharms., Inc. v. Broudo</u>, 544 U.S. 336, 341-42 (2005)  (citations omitted).  In addition,

8   "[t]he statute insists that securities fraud complaints "specify" each misleading statement; that

9   they set forth the facts "on which [a] belief" that a statement is misleading was "formed"; and

10   that they "state with particularity facts giving rise to a strong inference that the defendant acted

11   with the required state of mind.'" <u>Id.</u> at 345 (quoting 15 U.S.C. §§ 78U-4(b)(1), (2)).

12         Here, plaintiff's complaint fails to meet these pleading requirements.  He alleges

13   the defendant concealed some conflicts of interests, presumably the alleged omission.  However,

14   he fails to identify in an understandable way what the alleged conflict of interest was, and how

15   defendant concealed it.  In addition, there is nothing in the complaint indicating how plaintiff

16   relied on this omission or concealment, and how that omission resulted in economic loss.

17   However, as with the fraud claims above, it is possible that the defects in this claim may be cured

18   though amendment.

19         The motion to dismiss the securities fraud claims should be granted, with leave to

20   amend.

21         6.  <u>Violation of Gambling/Gaming Laws</u> (Claim 10):

22         Plaintiff claims defendant was operating as a de facto gambling operation, which

23   is illegal, by: operating a computerized trading program using faster access to trading platforms

24   than plaintiff; using information plaintiff could not access; using plaintiff's own trading

25   information against him; using information on a time basis not available to and harmful to

26   plaintiff; using large pools of money undisclosed to plaintiff to manipulate short-term outcomes

of securities trades.  Essentially using concealed house advantages.  They created an unfair trading program.

Defendant argues that plaintiff fails to identify the state or federal law that forms the basis for this claim and that entitles him to relief.  He also fails to provide for a private right of action or standing to assert this claim.

Plaintiff's claim appears to be a criminal claim which he would have no standing to assert.  He fails to identify the basis of his claim, which makes it difficult to determine whether he would have standing.  It does not appear as though he would as he specifically alleges illegal operations.  Such illegal activity would not be actionable in a private action.  This claim is implausible on its face.  See Iqbal, 129 S. Ct. at 1949.

The motion to dismiss the gaming violations claims should be dismissed without leave to amend.

7.  Violation of California's Consumers Legal Remedies Act (Claim 11):

Finally, plaintiff again argues that defendant offended public policy by its deceptive practices, which harmed Plaintiff.  Defendant's intention was for Plaintiff to rely on its deliberate misrepresentation, with knowledge that it was likely to harm plaintiff.  Concealed knowledge that SDAs lose money, yet created an illusion that SDA trading is a good way to invest even for an amateur.  Deceptive advertisement induced plaintiff, who relied on it.

This claim is duplicative of claim 4, above.  The conclusory allegations are insufficient to state a claim.  However, as provided above, plaintiff should be provided leave to amend both his fraud claims as well as a limited CLRA violation as to the services defendant provided.  As this claim is duplicative of the above claims, the leave to amend should encompass this claim.

The motion to dismiss the CLRA claim should be granted with limited leave to amend, as set forth above.

### III.   ARBITRATION

Defendant argues that if any claim survives the motion to dismiss, the remaining claims should be dismissed as plaintiff is bound by an arbitration clause in their contract.  The contract, and arbitration clause, was attached to counsel's declaration which was stricken as failing to comply with local rules.  While the court may have taken judicial notice of the arbitration clause as it was referred to in the complaint, the contract with the arbitration clause is no longer in the record. There is no arbitration clause available, therefore, to review and decide if the claims are barred thereby.  If counsel wishes to invoke the arbitration clause, it would appear more appropriate to do so in a separate motion or in response to any amended complaint plaintiff may file.  Therefore, the request to dismiss the entire case and refer it to arbitration should be denied.

### IV.   CONCLUSION

Plaintiff's complaint is full of conclusory statements, and lacks factual support for any of his claims.  His complaint simply recites the elements of each claim without factual support, which is insufficient.  Some of plaintiff's claims should be dismissed without leave to amend as indicated above.  However, his claims for fraud, which are insufficient in his current complaint, may be curable and leave to amend should be granted.  Similarly, his claim of violation of the CLRA may be curable, and limited leave to amend should be granted.

Based on the foregoing, the undersigned recommends that defendant's motion to dismiss (Doc. 14) be granted with limited leave to amend, as set forth above.  Any amended complaint should be filed within 30 days of the date these findings and recommendations are adopted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of

objections.  Failure to file objections within the specified time may waive the right to appeal.
See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


 DATED:  January 3, 2011

                                        _____
                                        **CRAIG M. KELLISON**
                                        UNITED STATES MAGISTRATE JUDGE